STRINE, Chief Justice,
concurring:
I concur in my colleagues’ ultimate resolution of this matter and in their finding that Rodriguez did not establish prejudice under Strickland. Accordingly, I agree that the judgment of the Superior Court should be affirmed. But I write separately to emphasize two points.
First, in responding to Rodriguez’s claims that his trial counsel was ineffective for failing to object to Fire Marshal Ward’s testimony and that the Superior Court’s limiting instruction did not cure any prejudice, my colleagues invoke the presumption that jurors can and will disregard information they have heard because the judge tells them to. I confess reticence to relying upon a judicially-invented *1082 presumption as a short-hand to address the admission of improper testimony that could lead a jury to convict a defendant for improper reasons.[14] In confessing that reticence, I in no way divide with the Majority Opinion on affirming the judgment of the Superior Court. But I see no reason to jump to reliance on the presumption here, when I fail to see in the first place how Ward’s statement was prejudicial to Rodriguez, who never disputed that the fires were deliberately set — only that he was not the one who set them. Ward was responding to a question about the cause of one of the fires for which Rodriguez was eventually acquitted, so the perception that all of the fires were the work of a single arsonist may even have assisted Rodriguez.
Furthermore, I agree with the Majority Opinion that based on the circumstances of this case, Rodriguez’s argument that the court’s curative instruction was ineffective and that the presumption is inconsistent with social science research is without merit. But that is precisely because an analysis of the arguably prejudicial evi-deuce indicates that it is of the sort that a jury could put out of its mind after being so instructed.[15] In situations when the improper evidence or argument is of a kind that bears more on the defendant’s guilt, it would be difficult for anyone to “unhear and unthink.” To ask a jury to do so, as Learned Hand noted in 1932, is “a mental gymnastic which is beyond, not only their powers, but anybody’s else.”[16] We should be reticent to invoke a judge-made presumption without considering whether it is a reliable basis for upholding a conviction under the specific circumstances of the case at hand.
Likewise, I cannot join my colleagues’ determination that Rodriguez’s trial counsel made a reasoned, tactical decision to defer his opening argument until after the State had presented its case and that this decision was not ineffective under the first prong of Strickland. Counsel’s sole explanation in his Rule 61(g)4[17] affidavit for deferring his opening statement until the end of the State’s case-in-chief was that he “believed that the State’s ability to connect the defendant with various incidences of *1083 arson was tenuous and therefore reserved opening statements until the full presentation of the State’s case.” No doubt the Superior Court Rules permit attorneys to choose to defer making an opening statement.[18] Thus, there is no invariable requirement that a defendant must give an opening statement at the beginning of trial, as this Court has recognized on multiple occasions.[19] But the decision not to do so should be made carefully because it leaves the jury with only the State’s version of events until deep into the trial process.
Not only that, a reading of the opening argument that Rodriguez’s counsel eventually made does not suggest that it was the careful product of counsel’s searching consideration of the State’s case-in-chief, and a distillation of its key weaknesses into an explanation for the jury of how the defense’s case would highlight the many reasons the State could not meet its high burden of proof. Instead, the opening that counsel had supposedly delayed for strategic advantage was perfunctory, occupying a full four transcript pages. Given other efforts of counsel during the case, which resulted in Rodriguez being acquitted of charges related to two of the fires, and the overall record, I agree with my colleagues that Rodriguez has not shown that had his counsel made an opening argument at the beginning of trial, there is a reasonable probability of a different outcome. Rodriguez has thus not satisfied his burden to demonstrate prejudice under the second prong of Strickland. But I cannot embrace the notion that counsel’s unexplained deferral of the right to speak to the jury on his client’s behalf and later generic opening can be deemed the product of a reasonable strategic decision-making process.

. See Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.”).

. See, e.g., David Alan Sklansky, Evidentiary Instructions and the Jury As Other, 65 STANFORD L. REV. 407 (2013) (finding that, contrary to the popular myth that they are per se ineffective, "[ejvidentiary instructions probably do work, although imperfectly and better under some circumstances than others”); Cassandra L. Wilson & Eric Laws, The Effect of Judges’ Instructions About Case Information on Jury Memory, 4 LONGWOOD UNIV. J. UNDERGRADUATE SCHOLARSHIP (2011), available at http://blogs.longwood.edu/incite/ 201 l/08/29/the-effect-of-judges% E2% 80% 99-instructions-about-case-information-on-jury-memory/ (citing S.M. Kassin & C.A. Studebaker, Instructions to Disregard and the Jury: Curative and Paradoxical Effects, INTENTIONAL FORGETTING; INTERDISCIPLINARY APPROACHES, Golding, J.M., & MacLeod, C.M., eds. (1998)) (“if the presented information is considered to be irrelevant or only slightly influences the case at hand, then it is much more likely that the juror will be able to disregard the statement.”). See also Kerri L. Pickel, et ah. Jurors' Responses to Unusual Inadmissible Evidence, 36 CRIM. JUSTICE & BEHAVIOR 466 (2009), available at http://kpickel.iweb.bsu.edu/PickelKaram& Warner(2009).pdf (finding that jurors are able to disregard or forget inadmissible evidence when the content of the evidence is neutral or not "especially memorable”).

. Nash v. U.S., 54 F.2d 1006, 1007 (1932).

. Super.Ct.Crim. R. 61(g).

. See Super. Ct. Civ. R. 42.1.

. See, e.g., Shockley v. State, 565 A.2d 1373, 1380 (Del.1989) (holding that counsel's "unorthodox” choice to waive both opening and closing statements was not constitutionally defective under Strickland); State v. Manlove, 1986 WL 14001, *2 (Del.Super.Nov. 17, 1986), aff’d, 527 A.2d 281 (Del.1987) ("The nature of the opening statement of counsel is largely a matter of litigation strategy. It cannot be said that counsel's following a particular strategy of speaking of certain matters and not of others constitutes ineffective assistance of counsel.”).